IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 16-cv-01117–KMT

CECILY BRICK,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

      Defendant.

---

## ORDER

---

This matter comes before the court on review of the Commissioner's denial of Plaintiff

Cecily Brick's application for Social Security disability benefits pursuant to Titles II and XVI of

the Social Security Act.[1]  Jurisdiction is proper under 42 U.S.C. § 405(g).

Plaintiff filed her opening brief on August 22, 2016 (Doc. No. 14 ["Opening Br."]),

Defendant filed her response on September 8, 2018 (Doc. No. 15 ["Resp."]), and Plaintiff filed

her reply on September 26, 2016 (Doc. No. 18 ["Reply"]).

---

[1] *See generally* Doc. No. 10, Social Security Administrative Record ["AR"].)  Plaintiff initially
claimed she became disabled in December 2011, but amended her alleged onset date to January
2013 (AR 188, 239).

## FACTUAL AND PROCEDURAL BACKGROUND

In denying Plaintiff's claim, Commissioner found Plaintiff not disabled under the Social Security Administration's regulations ("SSA"). (AR 15-31, 35-51). In determining disability, the ALJ used the five-step sequential evaluation process.[2] After reviewing the record, the ALJ found that Plaintiff had severe impairments that included interstitial cystitis with recurrent urinary tract infections, endometriosis and Nabothian cysts, and migraine headaches (AR 40). However, the ALJ found that she did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1.

The ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found her capable of working as follows: "The claimant the RFC to perform light work….She can occasionally climb ramps and stairs, but cannot climb ladders or scaffolds. She can occassionaly stoop, knell, crouch and crawl. She cannot work at unprotected heights or with dangerous, unprotected machinery. The claimant is limited to work with a maximum specific vocational preparation (SVP) two, this simple, routine and repetitive. She can have occasional interaction with supervisors, coworkers and the public." (AR 43). Based on this RFC, the ALJ found that Plaintiff's impairments would not preclude her from performing work that exists in significant numbers in the national economy, including work as a cleaner/housekeeper and bench assembler (AR 48). Consequently, the ALJ found that Plaintiff was not disabled. (AR 49).

Plaintiff sought timely review before this Court.

---

[2] Step one determines work activity, step two determines severity of claimed impairments, step three determines a presumptive disability, step four determines whether the claimant can still perform her "past relevant work," and step five determines if the claimant can do work other than her past relevant work. *See Williams v. Bowen*, 844 F.2d 748 (10th Cir. 1988) (detailing five steps). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

# STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

Review of the Commissioner's disability decision is limited to determining whether the ALJ (1) applied the correct legal standard and (2) whether the decision is supported by substantial evidence. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance. *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). However, the court may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Thompson*, 987 F.2d at 1487.

As the Tenth Circuit observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* This duty exists even when the claimant is represented by counsel. *Id.* at 480. Moreover, the court may not affirm an ALJ's decision based on a *post-hoc* rationale supplied in an appellate brief, since doing so would "usurp essential functions committed in the first instance to the administrative process." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). Although the Tenth Circuit has applied the doctrine of harmless error in administrative appeals, it is only appropriate where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 1145.

## ANALYSIS

Plaintiff raises several issues for consideration—primarily challenging the ALJ's application of treating physician principles. Plaintiff also contends that the ALJ's analysis engaged in cherry-picking evidence that was consistent with the final outcome, while ignoring

evidence that was supportive of Plaintiff's claim. The Court is persuaded by Plaintiff's arguments.

### A. The ALJ Erred in Application of Treating Physician Principles

Plaintiff challenges the ALJ's treating physician analysis—specifically, the analysis and the weight afforded to W. Paul Gessner M.D.'s medical opinion. Plaintiff contends that the ALJ did not afford Dr. Gessner any weight—let alone controlling weight under 20 C.F.R. § 416.927. In rebuttal to Defendant's arguments, Plaintiff also contends that the ALJ failed to assign proper weight to Dr. Gessner's opinion under the multi-factor assessment in 20 C.F.R. 416.927(c)(2). It is to the treating physician analysis the Court now turns.

An ALJ's duty is to evaluate all medical opinions in the record, assign weight to each opinion and discuss the weight given to the opinion. *See* 20 C.F.R. §§ 416.927(c), 416.927(e)(2)(ii); *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). Where the ALJ decides "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id*. If the ALJ declines to afford controlling weight to a treating physician, the ALJ "must" consider the following specific factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995)("the ALJ must consider the following specific factors in [20 C.F.R. §§ 416.927(c)] to determine what

weight to give any medical opinion"); *Lawton v. Barnhart*, 121 F. App'x 364, 372 (10th Cir. 2005) (same); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotation marks omitted).[3]

"Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons for the weight assigned to a treating physician's opinion." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir.2004) (ellipsis omitted) (internal quotation marks omitted); *see* 20 C.F.R. 416.927(c)(2). The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks omitted). "If the ALJ rejects the opinion completely, [s]he must then give specific, legitimate reasons for doing so." *Id.* (brackets omitted) (internal quotation marks omitted). And if an ALJ fails to explain how she assessed the weight of the treating physician's opinion, a court cannot presume she actually applied the correct legal standards when considering the opinion. *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

In challenging the ALJ's analysis, Plaintiff contends that the ALJ failed to apply binding Tenth Circuit law—*i.e.*, that a treating physician's opinion is generally afforded controlling weight upon two conditions being met. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (A treating physician's opinion is generally entitled to controlling weight if it "is [1] well

---

[3] Note: Although the ALJ must consider the factors in 20 C.F.R. 416.927(c), the ALJ need not address every factor when the factor does not "apply" in the "case." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).  Where the factor does apply, however, failure to address same constitutes legal error and warrants reversal and remand. *Goatcher*, 52 F.3d at 290; *see also Keyes–Zachary*, 695 F.3d at 1161.

supported by medically acceptable clinical and laboratory diagnostic techniques and [2] is consistent with the other substantial evidence in the record.")

Here, Dr. Gessner was Plaintiff's treating physician from February 15, 2012 through May 22, 2014. (AR 548-658, 859-897, and 534-541). He diagnosed Plaintiff with interstitial cystitis ("IC")—a condition, *inter alia*, that requires frequency of urination and pressure on the patient's bladder. Plaintiff argues that Dr. Gessner's opinion—being a treating physician—should have been afforded controlling weight.

As to the first *Pisciotta* prong, the record reveals that test results of Plaintiff's bladder and urine were abnormal. Indeed, tests of urine have been positive for blood, nitrites and urobilinogen. (AR 390, 397 and 412). In a report dated October 17, 2012, the University of Colorado expressly states under the header, "Diagnostic Tests," that Plaintiff was "positive for blood." (AR 390). Such tests led to Plaintiff use of urinary medications.[4] (430). And while the ALJ makes no mention to these precise tests or medications, it is assumed that they were reviewed in detail since the ALJ found that IC was severe impairment at step two of the sequential evaluation process. (AR 40). As such, there is little doubt that there is clinical and diagnostic data to support Plaintiff's condition as reported by Dr. Gessner.

As to the second *Pisciotta* prong, there is substantial evidence in the record from other medical providers to support Dr. Gessner's medical opinion. For example, Andrew Windsperger, M.D. stated that Plaintiff exhibited symptoms of IC, thus supporting Dr. Gessner's diagnosis (AR 45). Similarly, Wayne Furr, M.D.—a specialist in gynecology—treating Plaintiff on

---

[4] These medications included Terazosin, among others. (AR 899).

numerous occasions[5] supports Dr. Gessner's opinion. Tellingly, Dr. Furr was in agreement with Dr. Gessner as to not only Plaintiff's IC symptoms, but the limitations that would flow from same. (AR 46).

In light of the above, the Court finds it hard to fathom how the ALJ did not find that Dr. Gessner's opinion should be afforded controlling weight—consistent with *Pisciotta a*nd the SSA regulations themselves. *See generally* 20 C.F.R. § 416.927.

Even so, assuming *arguendo* that the Court is wrong in its conclusion *vis-à-vis* controlling weight, there is nothing of substance in the ALJ's decision that demonstrates that a multifactor analysis was undertaken in accordance with § 416.927(c)(2) (*i.e.*, the analysis undertaken if the ALJ declines to afford a treating physician's opinion controlling weight). Defendant suggests that the multiple factors were assessed when weight was apportioned to Dr. Gessner, but this nothing more than *post-hoc* analysis. (Resp. at 15). Indeed, the ALJ's decision must be evaluated based solely on the reasons articulated by the ALJ himself—not alternative bases posited by Defendant in response briefing, well after a decision has been made. Such *post hoc* rationalizations are inappropriate. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005); *see also Barnhart*, 357 F.3d at 1142 ("Affirming this *post hoc* effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

In sum, the errors in analyzing Dr. Gessner's opinion warrant reversal and remand.

---

[5]  *See* AR 430-35, 492-512, 854-58, 547, and 839-49.

## B. Remaining Issues

Plaintiff raises additional issues related to the sufficiency of the underlying proceedings. Because the Court finds that the ALJ's treating physician analysis is deficient in several respects, the Court finds that correction of these errors could well alter the ALJ's analysis of other evidence in the record on remand. For example, Dr. Furr's opinion was afforded "little weight" (AR 46)—yet on reconsideration of same, the ALJ may find that Dr. Furr's opinion is consistent with Dr. Gessner and thus deserving of further weight. This will be left to the ALJ to consider in accordance with this opinion. Additionally, and it is worth noting, that if the ALJ affords heighted weight to Drs. Gessner and. Furr, this will likely alter the current RFC statement—a statement that Plaintiff squarely challenges in her briefing.[6] Because of these shifting sands on remand, the Court declines to address this issue at this time; though strongly recommends it be addressed in detail by the ALJ. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues).

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this case is REMANDED to the Commissioner for rehearing.

Accordingly, it is

**ORDERED** that the Commissioner's decision is **REVERSED** and this case is

**REMANDED** to the Commissioner for rehearing in accordance with this Order. It is further

---

[6] The RFC assessment is made by the ALJ "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). Examples of the types of evidence required to be considered in making an RFC assessment are the claimant's medical history, medical signs and laboratory findings, and medical source statements. SSR 96–8p (July 2, 1996).

**ORDERED** that Plaintiff is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and

D.C.COLO.LCivR 54.1.

Dated this 8th day of March, 2018.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge